# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| LISA HERNANDEZ | CIVIL ACTION |
| VERSUS | 14-42-SDD-EWD |
| EARL THERIOT, ET AL. | |

## RULING

This matter was tried before the Court, sitting without a jury, on June 6, 2016. Having considered the testimony and evidence presented at trial, the pre-trial and post-trial briefs submitted by the parties, arguments of counsel, and the applicable law, the Court issues the following Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure. The Court adopts by reference all factual findings and oral reasons given at the conclusion of trial and incorporates those findings and reasons into this opinion.

## BACKGROUND & PROCEDURAL HISTORY

This case arises out of claims by Plaintiff Lisa Hernandez that, on November 1, 2013, at around 12:00 p.m., while severely inebriated, she was taken into custody by Sorrento Police Chief Earl Theriot who later sexually assaulted her. Plaintiff brought suit against the Defendants Earl Theriot and the Town of Sorrento under 42 U.S.C. § 1983 for allegedly violating her constitutional rights, and she also asserted various Louisiana

32864

state law tort claims.  The Town of Sorrento filed a *Motion to Dismiss*,[1] which was denied by the Court in its August 5, 2014 *Ruling*.[2]  Defendants Sorrento Mayor Mike Lambert and Risk Management, Inc. also filed *Motions to Dismiss*,[3] both of which were granted without opposition.[4]  This matter proceeded to a bench trial on June 6, 2016.[5]

## FINDINGS OF FACT

1. Plaintiff Lisa Hernandez is a major and resident of the Parish of Ascension, State of Louisiana.

2. Defendant Earl Theriot was the duly elected Chief of Police for the Town of Sorrento at all relevant times to this litigation.

3. Defendant Town of Sorrento is a municipal corporation located in Ascension Parish, Louisiana, and governed under the Lawrason Act (La. R.S. 33:321, *et seq.*).

4. On November 1, 2013, Plaintiff was heavily intoxicated and passed out in front of 61 Junk Street, 9291 Airline Highway in Sorrento, Louisiana.[6]  Plaintiff had in her possession a bottle of vodka.[7]

5. On November 1, 2013, 911 received a call regarding Plaintiff's intoxicated status at 61 Junk Street, which resulted in Defendant Earl Theriot responding to a call for service from Ascension Parish Sheriff's Office Dispatch.[8]

---

[1] Rec. Doc. No. 10.
[2] Rec. Doc. No. 33.
[3] Rec. Doc. Nos. 11 & 12.
[4] Rec. Doc. No. 32.
[5] Rec. Doc. No. 70.
[6] Transcript, Rec. Doc. No. 82, pp. 60-62..
[7] *Id.*, p. 64, 105.
[8] *Id.*, p. 61.
32864

6. Defendant Theriot responded to this call while on duty, in uniform, and in his police unit.

7. Although Acadian Ambulance also responded to the scene because Plaintiff was initially unresponsive, Defendant Theriot "called off" the ambulance once Plaintiff regained consciousness.[9]

8. Defendant Theriot instructed Plaintiff to get into his police vehicle, to sit in the front seat, and placed her bottle of vodka in the car.[10]

9. While transporting Plaintiff to the Police Station, Defendant Theriot groped Plaintiff's chest, advised Plaintiff that it was her "lucky day,"[11] and that "he was going to do [her] a favor and [she] was going to do him a favor."[12]

10. Defendant Theriot drove Plaintiff to her house and advised her that this was because of the GPS locator in his police unit.[13] Defendant Theriot instructed Plaintiff to remain quiet while he falsely called in to dispatch and reported taking Plaintiff home, although it was clear to Plaintiff that Theriot did not intend to leave Plaintiff at her home.[14]

11. Plaintiff ultimately returned with Defendant Theriot to his office where Plaintiff remained for some amount of time while Defendant Theriot conducted business with the Mayor.[15]

---

[9] Id., pp. 63-64.
[10] Id., p. 66.
[11] Id., p. 66.
[12] Id.
[13] Id., p. 67.
[14] Id.
[15] Id., p. 69.
32864

12. Plaintiff believed that she was locked inside Theriot's office, and, although she was able to sit outside the back door to smoke, she believed she could not leave based on the implied threat of being sent to jail if she failed to cooperate with Theriot's demands.[16]

13. While inside Theriot's office, Plaintiff used Theriot's telephone to call her boyfriend several times;[17] however, Plaintiff did not call anyone for assistance or attempt to leave. While inside Theriot's office, Plaintiff took a set of keys and other objects from Theriot's desk and placed them in her purse.[18]

14. Following a phone call from Plaintiff's boyfriend Dewayne Hingle, Theriot returned to his office and admonished Plaintiff for having called Hingle.[19]

15. At Theriot's prompting, Plaintiff attempted to perform oral sex on Theriot twice; however, the act could not be completed because of Theriot's impotence. Theriot then instructed Plaintiff to attempt vaginal intercourse by sitting on his lap, but this was also unsuccessful.[20]

16. Plaintiff was interviewed by the Federal Bureau of Investigation (FBI) about this incident.

17. On January 31, 2014, Earl Theriot entered a guily plea pursuant to a *Plea Agreement* with the United States to the charge of making false statements in violation of 18 U.S.C. § 1001(a)(2).[21]

---

[16] *Id.*, pp. 69-71.
[17] *Id.*, p. 71, 74.
[18] *Id.*, pp. 85-86.
[19] *Id.*, pp. 74-75.
[20] *Id.*, pp. 79-82.
[21] Exhibit Pla-24-a.
32864

18. In the January 31, 2014 *Plea Agreement*, Theriot agreed to the factual basis contained therein which stated that he "engaged in inappropriate sexual contact" with Plaintiff after she was taken to his office.[22]

19. At trial, Earl Theriot was called to the stand and, to every question asked of him other than his name and address, Theriot responded: "Plead the Fifth."[23]

## CONCLUSIONS OF LAW

### Earl Theriot

1. Section 1983 Liability

The Court has already held that Theriot is liable under Section 1983 in his official capacity for violating the Plaintiff's constitutional rights.[24]  Theriot has also been sued in his individual capacity under Section 1983.  Theriot is likewise liable in his individual capacity under the same facts established above.

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the

---

[22] *Id.* at p. 5.

[23] Rec. Doc. No. 82, pp. 183-185. The Court has also drawn an adverse inference from Theriot's silence in this case which is appropriate under Fifth Circuit jurisprudence:

> Nevertheless, "while a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him ... his refusal to testify may be used against him in a civil proceeding." *Farace v. Indep. Fire Ins. Co.*, 699 F.2d 204, 210 (5th Cir.1983). Thus, although a jury in a criminal case is not permitted to draw adverse inferences based on a defendant's invocation of his Fifth Amendment rights, it is well-settled that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976).

*Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008).

[24] The Court incorporates by reference into this opinion the oral reasons previously assigned at the conclusion of the bench trial in this matter.

32864

alleged deprivation was committed by a person acting under color of state law.'"[25]  The Fifth Circuit has recognized the "right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process."[26] The Supreme Court in *DeShaney v. Winnebago County Dept. of Social Services*,[27] recognized the relationship between the Fifth and Fourteenth Amendments as follows: "Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'"[28] Accordingly, the Fifth Amendment provides due process protection for the bodily integrity of citizens from harm imposed by federal actors.

The Court noted at the conclusion of the Bench Trial that, if the sexual contact between Plaintiff and Theriot was consensual, there was no constitutional violation. However, as the Court previously held, the sexual contact in this case could not have been consensual for two separate reasons.  First, it is undisputed that Plaintiff was severely inebriated on November 1, 2013, when she was picked up by Theriot and taken to his office.  It is also undisputed that she continued to drink vodka in the car and while in Theriot's office leading up to the sexual encounters.  Louisiana Revised Statute 14:43 provides that:

> A. Third degree rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:
>
> (1) When the victim is incapable of resisting or of understanding the nature

---

[25] *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis I.S.D.*, 233 F.3d 871, 874 (5th Cir. 2000)).

[26] *Doe v. Taylor Independent Sch. Dist.*, 15 F.3d 443 (5th Cir.1994).

[27] 489 U.S. 189 (1989).

[28] *Id.* at 196 (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)) (brackets in original).

32864

of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim's incapacity.

The Court finds that Plaintiff was unable to form consent due to her extreme intoxication on the date in question. There is also no question that Theriot was aware of Plaintiff's state; indeed, the 911 dispatch call to which Theriot responded reported Plaintiff's intoxication.

Second, the Court finds that Plaintiff lacked consent based on the position of power and authority which Theriot exercised. The Court is guided by the Fifth Circuit's decision in *Bennett v. Pippin*,[29] wherein a sheriff responding to a domestic violence call raped the female plaintiff after responding to the call. The sheriff was sued under Section 1983 in his official and individual capacities. The Fifth Circuit upheld the trial court's holding that the sheriff acted under color of state law when he raped the plaintiff:

> We also find no error in the district court's conclusion that the Sheriff acted under color of state law when he raped Ms. Bennett. The district court found that the Sheriff questioned Ms. Bennett about the earlier shooting for 30–45 minutes as the two sat on her porch, just before the rape occurred. The court also found that, in response to Ms. Bennett's refusals to have sex, the Sheriff said, "I can do what I want, I'm the Sheriff." The Sheriff himself testified that he used his authority as Sheriff to ascertain whether Mr. Bennett would be released from the hospital on the night of the rape. The plaintiff needed the Sheriff's permission to retrieve her pickup truck and to change her place of residence. Under such circumstances, we cannot argue with the district court's observation that "it was not lost on Gail Bennett (or the Sheriff) that the Sheriff carried the keys to the Archer County Jail with him in his pocket and wielded coercive power over Gail Bennett." The Sheriff's actions were an abuse of power held uniquely because of a state position, *see United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), and the explicit invocation of governmental authority constituted a "real nexus" between the duties of Sheriff and the rape. *Doe v. Taylor Independent School District*, 15 F.3d 443, 452 n. 4 (5th Cir.), cert. denied, 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994).[30]

---

[29] 74 F.3d 578 (5th Cir. 1996).
[30] *Id.* at 589.
32864

The same analysis and reasoning applies in the present case.  There was at least an implied, if not an overt, threat that Plaintiff would be arrested and jailed if she did not perform Theriot's "favor."  Theriot used the power and authority of his position as Police Chief to wield coercive power over Plaintiff.  Thus, the Court finds that the improper use of the power of his authority and position operated as a further impediment to Plaintiff's ability to consent to any sexual encounter.

2.  Sexual Assault and Sexual Battery[31]

Plaintiff has also carried her burden of proving by a preponderance of the evidence that Theriot committed the state law torts of sexual assault and sexual battery.  Under Louisiana law,  "[a]ssault is, speaking generally, threat of a battery. 'Battery is a harmful or offensive contact with a person, resulting from an act intended to cause him to suffer such a contact.... An assault is a threat of such harmful or offensive contact.'"[32]

As set forth from the established facts of this case, Plaintiff has proven by a preponderance of the evidence that Theriot committed both assault and battery upon her of a sexual nature.  The uncontroverted evidence of Theriot's comments during the transport of Plaintiff to his office regarding her "lucky day" and doing him a "favor" in order to avoid going to jail constitute an assault under Louisiana law.  These comments threatened the eventual sexual battery that would take place.  The uncontroverted evidence that Theriot groped Plaintiff's breasts in the car and then instructed her to

---

[31] While Plaintiff claims she has suffered the torts of "sexual assault" and "sexual battery," Louisiana courts have made clear that the proper names of the relevant causes of action in tort are simply "assault" and "battery," even when such torts are sexual in nature. *Lawson v. Straus*, 95-1537 (La. App. 4 Cir. 3/14/96), 673 So.2d 223, n. 1.  Plaintiff's claim of "sexual abuse" is likewise addressed herein as sexual battery.
[32] *Id.* at 226 (quoting *Brown v. Diversified Hospitality Group*, 600 So.2d 902, 906 (La. App. 4 Cir.1992)).
32864

perform oral and vaginal sex in his office constitutes sexual battery. The Court finds that Theriot intended the harmful and offensive contact.

3. Intentional Infliction of Emotional Distress ("IIED")

To recover on an intentional infliction of emotional distress claim in Louisiana, a plaintiff is required to show that (1) the defendant's conduct was extreme and outrageous; (2) the plaintiff suffered severe emotional distress; and (3) "the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[33] The conduct requirement in an IIED claim is difficult for a plaintiff to meet; the standard does not reach "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities," but, rather, the behavior must "go beyond all possible bounds of decency, [and must] be regarded as atrocious and utterly intolerable in a civilized community."[34]

The uncontroverted evidence easily satisfies the first two elements. Theriot's conduct was extreme and outrageous, and particularly beyond the bounds of decency; indeed, it is atrocious and intolerable in a civilized community. Additionally, although no medical testimony or evidence was presented in support of this element, it is clear to the Court from Plaintiff's own testimony that she has suffered severe emotional distress and humiliation as a result of the sexual assault by Theriot. However, there was no evidence presented at trial to establish element (3): that Theriot desired to inflict severe emotional distress or was certain or substantially certain that such distress would result from his conduct. The intent element for an IIED claim is distinguishable from the intent element

---

[33] *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La.1991).
[34] *Id.*; *see also Iturralde v. Shaw Grp., Inc.*, 512 Fed.Appx. 430, 435 (5th Cir. 2013) ("Under Louisiana Civil Code Article 2315, plaintiffs must meet a high burden of proof to prevail on an IIED claim.").
32864

discussed above for assault and battery under state law.  The evidence in this case established that Theriot intended the offensive and harmful sexual contact, but the Court cannot conclude without speculation that Theriot's intent was to inflict severe emotional distress on Plaintiff.

    4.  <u>False Imprisonment</u>

    False imprisonment or arrest occurs when one arrests and restrains another against his will and without statutory authority.[35] As explained by the court in *Kyle v. City of New Orleans*:  "Simply stated, it is restraint without color of legal authority. Thus, if police officers act pursuant to statutory authority in arresting and incarcerating a citizen, they are not liable for damages for false arrest and imprisonment."[36]  The tort of false arrest, or false imprisonment, has two essential elements: (1) detention of a person; and (2) the unlawfulness of such detention.[37]  Malice is not a necessary element of the tort of false imprisonment and is immaterial except as it may affect the question of damages.[38] In an employment context, Louisiana courts have held:

> False imprisonment is the unlawful and total restraint of the liberty of the person. *Crossett v. Campbell*, 122 La. 659, 48 So. 141 (1908).  Submission to the mere verbal direction of an employer, unaccompanied by force or by threats, does not constitute false imprisonment. *Moen v. Las Vegas Intern. Hotel, Inc.*, 90 Nev. 176, 521 P.2d 370 (1974); *Mullins v. Rinks, Inc.*, 27 Ohio App.2d 45, 272 N.E.2d 152 (1971); *White v. Levy Brothers, Inc.*, 306 S.W.2d 829 (Ky.1957). And there is no false imprisonment where an employer declines to terminate an interview of his employee if no force or threat of force is used. *Id*.  **False imprisonment may not be predicated on a person's unfounded belief that he was restrained**. *Id*. Apprehension that one might in the future lose one's job or be prosecuted

---

[35] *Plaisance v. Thibodeaux*, 05-988 (La. App. 5 Cir. 4/25/06), 930 So.2d 1009, 1012 (citing *Kyle v. City of New Orleans*, 353 So.2d 969 (La.1977).

[36] *Kyle*, 353 So.2d at 971.

[37] *Tabora v. City of Kenner*, 94-613 (La. App. 5 Cir. 1/18/95), 650 So.2d 319, 322, citing *Edmond v. Hairford*, 539 So.2d 815, 817 (La. App. 3 Cir.1989).

[38] *Id*. (citing *Edmond, supra*: *Fontenot v. Lavergne*, 365 So.2d 1168 (La.App. 3 Cir.1978)).

32864

for theft is not the force or the threat of force necessary to establish false imprisonment. *Moen, supra.* **Bare words are insufficient to effect an imprisonment if the person to whom they are spoken is not deprived of freedom of action.** *Ford Motor Credit Co. v. Gibson*, 566 S.W.2d 154 (Ky.1977); *Grayson Variety Store, Inc. v. Shaffer*, 402 S.W.2d 424 (Ky.1966).[39]

The seizure of a person, as described in *United States v. Mendenhall*, is whether, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."[40]  Thus, in the instant case, Plaintiff had the burden of proving by a preponderance of the evidence that she was actually detained, or that the circumstances would lead a reasonable person to believe she was not free to leave and that such detention was unlawful.[41]  Based on the testimony presented at trial, the Court cannot find that Plaintiff has satisfied her burden on the false imprisonment claim.

First, Plaintiff opted not to exit Theriot's car when he drove her to her mother's home.  Second, there was conflicting evidence about whether Plaintiff was locked inside Theriot's office; however, Plaintiff's own testimony established that she was not locked in because she left Theriot's office by the back door on at least one occasion to smoke, and then returned to the office.  Third, Plaintiff made several phone calls to her boyfriend while she was inside Theriot's office, which further suggests that she was not "restrained" and could have called for help.  There was also no evidence or testimony that Plaintiff was told that she could not leave.  Finally, Plaintiff's testimony that Theriot tied her wrists with

---

[39] *Kelly v. West Cash & Carry Bldg. Materials Store*, 99-0102 (La. App. 4 Cir. 10/20/99), 745 So.2d 743, 750 (emphasis added).
[40] 446 U.S. 544, 554 (1980).
[41] *See, Vincent v. State Through Department of Corrections*, 468 So.2d 1329 (La. App. 1 Cir.1985), *writ denied*, 472 So.2d 34 (La.1985), concurring opinion and cases cited therein.
32864

her cloth belt is contradicted by her FBI Interview given on December 3, 2013.[42] Plaintiff's account of this incident to the FBI contains no reference to her being restrained at any time by anything, including her belt. In fact, in her statements to the FBI, Plaintiff recounted Theriot's anger at her for calling Hingle, but makes no mention of her belt until after attempted oral sex was unsuccessful. Upon Theriot's suggestion that they attempt vaginal intercourse, the FBI interview reads: "Hernandez took her pants down to her ankles and her belt was hanging and making noise so she took it off and put it on Theriot's desk." The Court simply cannot find from this conflicting evidence that Theriot restrained Plaintiff's wrists by her belt. The Court is mindful of Plaintiff's inebriated state and recognizes that Plaintiff may have held the subjective belief that she was not free to leave; nevertheless, Plaintiff's conflicting testimony failed to establish the necessary elements for false imprisonment by a preponderance. There is simply insufficient evidence that Plaintiff was locked in Theriot's office and restrained such that she was unable to leave of her own free will. To be clear, the fact that Plaintiff was not physically detained or restrained in no way undermines the Court's finding that Theriot abused his power and office under color of law by sexually assaulting an intoxicated woman who could not give legal consent.

## Town of Sorrento

The Town of Sorrento is liable under Section 1983 because the evidence established that, as Chief of Police, Theriot was the chief policymaker regarding day-to-day law enforcement in the Town of Sorrento. As this Court has previously held, the

---

[42] Exhibit Def C-3.
32864

Lawrason Act, adopted in 1898 provides that "[a]ll municipalities shall be governed by the provisions of this [Act] except those municipalities governed by a special legislative charter or a home rule charter or plan of government adopted pursuant to Article VI of the Constitution of Louisiana."[43]  The Town of Sorrento is not subject to a special legislative charter or home rule charter plan of government. Accordingly, Sorrento is a Lawrason Act municipality.[44]  The state law at the time of the subject incident provided that: "The officers of every [Lawrason] municipality shall be a mayor, aldermen, a chief of police, a tax collector, and a clerk. . . . The mayor and chief of police in all municipalities shall be elected at large."[45]

It is undisputed that Earl Theriot was the elected Police Chief of Sorrento. Pursuant to La. R.S. 33:404, the mayor is granted authority over various administrative functions, but the statute specifically provides that certain authority is delegated to an elected chief of police:

> The Lawrason Act, La.R.S. 33:404, grants the mayor the following pertinent authority:
>
> (1) To supervise and direct the administration and operation of all municipal departments, offices, and agencies, *other than a police department with an elected chief of police*, in conformity with ordinances adopted by the board of aldermen and with applicable provisions of state law....[46]

The Court has already found that Theriot was the final decision maker with respect to law enforcement in Sorrento at the time that he violated Plaintiff's constitutional rights, and these unconstitutional acts arose in connection with Theriot's exercise of his law

---

[43] La. Rev. Stat. Ann. § 33:321
[44] *See*, La. Att'y Gen. Op. No. 09-0013 (Jan. 27, 2010).
[45] La. Rev. Stat. Ann. § 33:381 (But *see*, 2014 La. Sess. Law Serv. Act 605 (West)).
[46] *Doyle v. City of Harahan*, 610 So.2d 272 (La. App. 5 Cir. 1992)(emphasis in original).
32864

enforcement authority.

"It is well established that a municipality may be held liable for 'course[s] of action tailored to a specific situation and not intended to control decisions in later situations,' provided that 'the decision to adopt that particular course of action is properly made by that government's authorized decision makers.'"[47] When the person who committed the challenged act is in charge of policymaking in that part of the government, "'policy' can sometimes be found to have been established by the very act itself."[48]  Thus, a municipality may be liable for even a single act or decision if it is made by a final policymaker responsible for that activity or decision if that action "was the moving force behind and direct cause of the alleged injury."[49] Without doubt, Theriot's alleged conduct was *ultra vires*, but the fact that sexual assault is not a legitimate law enforcement function does not control the outcome.  Rather, "[w]hen the official representing the ultimate repository of law enforcement power in the [municipality] makes a deliberate decision to abuse that power to the detriment of its citizens, [municipal] liability under section 1983 must attach, provided that the other prerequisites for finding liability under that section are satisfied."[50]

Because the Court has found that Theriot, acting in his official capacity as Chief of

---

[47] *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 754 (5th Cir. 1993)(citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)).
[48] *Okon v. Harris County Hosp. Dist.*, 426 Fed. Appx. 312, 316 (5th Cir. 2011)(quoting *Hampton Co. Nat'l Sur. LLC v. Tunica Cnty.*, 543 F.3d 221, 227 (5th Cir. 2008)).
[49] *Hampton*, 543 F.3d at 227.
[50] *Turner v. Upton County, Texas*, 915 F.2d 133, 138 (5th Cir. 1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991).  *See also Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996)("In this case, the Sheriff's actions were those of the County because his relationship with Bennett grew out of the attempted murder investigation and because, as we will explain, he used his authority over the investigation to coerce sex with her. The fact that rape is not a legitimate law enforcement goal does not prevent the Sheriff's act from falling within his law enforcement function.").
32864

Police for the Town of Sorrento, violated Plaintiff's constitutional rights in this matter, the Town of Sorrento is liable as a matter of law.  Under Louisiana law, Theriot was a final policymaker; thus, the municipality is liable for his acts under Section 1983.

The Town of Sorrento is also vicariously liable for the state law torts committed by Theriot.  An employer is liable for the torts of an employee committed while the employee is acting within the course and scope of his employment.[51]  "Vicarious liability rests in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities."[52]  An employer's vicarious liability for conduct which is not its own extends only to the employee's tortious conduct that is within the course and scope of employment.[53]  "Course" refers to the time and place that the conduct occurred, while "scope" examines the employment-related risk of injury.[54]

In *Baumeister v. Plunkett*, the Louisiana Supreme Court established a four-part test for vicarious liability: (1) whether the tortious act was primarily employment rooted; (2) whether the act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether the act occurred during the hours of employment.[55]  Based on the Court's findings of fact presented above, the uncontroverted evidence in this case shows that all four elements for vicarious liability are met in this case.  Theriot used his position as Chief of Police to threaten Plaintiff with jail if she did not comply with his sexual demands.  The acts of

---

[51] La. Civ.Code art. 2320.
[52] *Richard v. Hall*, 2003-1488 (La. 4/23/04); 874 So.2d 131, 137.
[53] *Kelley v. Dyson*, 10-61 (La.App. 5 Cir. 5/25/10); 40 So.3d 1100, 1105.
[54] *Baumeister v. Plunkett*, 673 So.2d 994, 996 (La.1996).
[55] *Id.* at 996–97 (citation omitted).
32864

responding to the dispatch call, feigning dropping Plaintiff off at her home, and subsequently bringing Plaintiff to his office while he intermittently conducted official duties, collectively show that the acts were reasonably incidental to the performance of Theriot's employment duties.   There is also no dispute that the sexual act occurred on the employer's premises and during Theriot's hours of employment.

Accordingly, the Town of Sorrento is vicariously liable for the state law torts committed by Theriot during the course and scope of his employment.

## Damages

Having found the Town of Sorrento and Earl Theriot liable under Section 1983 and the Town vicariously liable for the state law tort claims for which Theriot has been found liable, the Court is tasked with determining the appropriate damages to award Plaintiff. Plaintiff submitted no evidence to support an award of special damages.[56]   General damages are those which may not be fixed with pecuniary exactitude; instead, they involve "mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms."[57]   In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.[58] The discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages.[59]

---

[56] "Special damages are those which either must be specially pled or have a 'ready market value,' *i.e.*, the amount of the damages supposedly can be determined with relative certainty." *Wainwright v. Fontenot*, 2000-0492 (La. 10/17/00), 774 So.2d 70, 74, quoting Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7-2 (Michie 1996) (footnotes omitted).

[57] *Bellard v. American Cent. Ins. Co.*, 2007–1335 (La.04/18/08), 980 So.2d 654.

[58] La. Civ. Code art. 2324.1.

[59] *LeBlanc v. Pynes*, 46,393 (La. App. 2d Cir.07/13/11), 69 So.3d 1273, 1283–84, *writ denied*, 2011–1792 (La.10/14/11), 74 So.3d 213.

32864

Plaintiff has asked for compensatory and punitive damages.    Compensatory damages awarded pursuant to Section 1983 are governed by common law tort principles.[60] Damages are available for both physical and psychological injuries.[61] The Court has considered the damages awarded in cases involving similar facts as those before the Court.[62]

Although Plaintiff presented no evidence of physical injuries other than the offensive sexual contact, she did testify that she suffered humiliation and mental and emotional stress following this incident. Specifically, Plaintiff testified that she was fearful of possible repercussions for reporting the incident, and claimed that her relationship with her fiancé was strained because of the assault. Although Plaintiff acknowledges that she was an alcoholic prior to this incident, she testified that her drinking continued based in part on the accompanying stress and embarrassment. The record also reflects that the Plaintiff sought treatment from a psychiatrist following this event.[63] The Court finds that compensatory damages in the amount of $15,000.00 is an appropriate award for both the

---

[60] *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir.1994); *Keyes v. Lauga*, 635 F.2d 330, 336 (5th Cir.1981).
[61] *Dunn v. Denk*, 54 F.3d 248, 250 (5th Cir.1995).
[62] *See Oxendine-Bey v. Harihan*, No. 5:12-CT-3084-FL, 2015 WL 5330571 (E.D.N.C. Sep. 14, 2015)(district court awarded $5,000 in compensatory and $5,000 in punitive damages to an inmate-plaintiff who had been subjected to repeated inappropriate sexual comments and sexual contact by a prison physician); *Morton v. Johnson*, No. 7:13–cv00496, 2015 WL 4470104, at *9 (W.D.Va. July 21, 2015) (awarding $2,000.00 in compensatory damages where prison guard "hugged Morton, touched her breast, and rubbed down [her] stomach down to [her] private area and felt [her] up" and plaintiff received mental health treatment subsequent to the assault); *Cleveland v. Curry*, No. 7–CV–02809–NJV, 2014 WL 690846, at *1–2 (N.D.Cal. Feb. 21, 2014) (awarding between $2,000.00 and $10,000.00 in compensatory damages when defendant squeezed plaintiffs' genitalia for several seconds and plaintiffs suffered physical, mental, and/or emotional injuries); *Ivey v. Toomey*, No. 9:11–CV–85, 2012 WL 1995246, at *1–2 (E.D.Tex. Apr. 12, 2012) (awarding $25,000.00 in compensatory damages when guard sexually assaulted her resulting in bleeding and bruising), *adopting mem. and recomm.*, No. 9:11cv85, 2012 WL 1995233 (E.D. Tex. June 1, 2012); and *Hyde v. Nicholas*, 32 Fed. Appx. 127 (5th Cir. 2002)(affirmed award of $50,000 in damages to plaintiff who was sexually assaulted by a police officer in a school parking lot).
[63] Plaintiff's medical records were excluded from trial based on an unopposed *Motion in Limine* for failure to timely disclose said records.  Rec. Doc. No. 69.
32864

federal and state tort claims under the facts of this case and the evidence presented.

Plaintiff also seeks punitive damages in this case. In Louisiana, punitive damages are not allowable unless expressly authorized by statute.[64] There is no statute authorizing the award of punitive damages for the state torts of assault and battery.[65] It is also well-settled that municipalities are immune from punitive damages under 42 U.S.C. § 1983.[66] "Punitive damages are, however, recoverable against municipal employees who are sued in their individual capacities pursuant to a § 1983 claim."[67] Under Section 1983, "punitive damages are discretionary and 'may be awarded only if the official conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights.'"[68] Thus, because Earl Theriot was sued under Section 1983 not only in his official capacity but also in his individual capacity, the Court finds that punitive damages are available to Plaintiff on this claim.

The Court also finds that Theriot engaged in particularly egregious behavior that demonstrated a reckless and callous indifference to Plaintiff's constitutional rights. Punitive damages must bear a "reasonable relationship" to compensatory damages.[69] The Court finds that punitive damages in the amount of $35,000.00 are warranted under

---

[64] See *Arabie v. CITGO Petroleum Corp.*, 2010-2605 (La. 3/13/12), 89 So.3d 307, 313, citing La. Civ. Code art. 3546.

[65] See *Barnes v. McQueen*, 2016 WL 872110, at *14 (E.D. La. Mar. 7, 2016).

[66] *Broussard v. Lafayette City-Parish Consolidated Government*, 45 F.Supp.3d 553, 578 (W.D. La. 2014)(" It has been thirty-three years since the Supreme Court clearly stated: 'we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983.' *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Davis v. West Community Hospital*, 755 F.2d 455, 459, 467 (5th Cir.1985).").

[67] *Id.* at 579 (citing *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)(citing *Smith v. Wade*, 461 U.S. 30, 35, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), and *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir.2003)).

[68] *N.S. v. City of Alexandria*, 919 F.Supp.2d 773, 781 (W.D. La. 2013)(quoting *Sockwell*, 20 F.3d at 192).

[69] *Poullard v. Turner*, 298 F.3d 421, 423 (5th Cir. 2002) (citations omitted).
32864

the facts of this case.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this ___ day of August, 2016.

SHELLY D. DICK, DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

32864