UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LISA HERNANDEZ | * | CIVIL ACTION NO. 3:14-CV-42-SDD-EWD |
| VERSUS | * | JUDGE SHELLY D. DICK |
| EARL THERIOT, ET AL. | * | MAGISTRATE ERIN WILDER-DOOMES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

EARL THERIOT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS

**NOW INTO COURT**, through undersigned counsel, comes Defendant Earl Theriot ("Mr Theriot"), who, with respect, hereby submits the following Memorandum in Opposition to the Motion for an Award of Attorney's Fees and Costs ("Motion for a Attorney's Fees") filed by Plaintiff Lisa Hernandez ("Ms. Hernandez").

I.   Law and Argument:

Attempting to salvage whatever scraps she can from her disappointing verdict at trial, Plaintiff now moves that the Court grant costs and attorney's fees in the staggering amount of $89,510.94. This figure – an amount nearly *six times* the compensatory damage award in this case, and a staggering $39,510.94 higher than the total damage award – is wildly inappropriate.[1] First, applying the prevailing lodestar analysis, both the rates and hours claimed are unreasonable on their face and should be reduced. Secondly, Plaintiff's fee award should be further reduced in light of the limited success achieved at trial, particularly as evinced by the meager verdict of damages awarded. For these reasons, Plaintiff's request for attorney's fees and costs should be reduced to $20,978.42 in light of her counsel's excessive appraisal of its hourly rates, excessive claimed hours, and poor performance resulting in limited success at trial.

---

[1] *See*: Doc. 86, p. 17-18.

A.      **Standard for granting attorney's fees and costs.**

The U.S. Supreme Court has recognized that "[t]he general rule in our legal system is that each party must pay its own attorney's fees and expenses."[2]  However, 42 U.S.C. § 1988(b) provides that "[i]n any action or proceeding to enforce a provision of section[] … 1983 of this title, … the court, *in its discretion*, may allow the prevailing party … *a reasonable attorney's fee* as part of the costs[.]"[3]  The Supreme Court has recognized that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case" and "the lodestar method yields a fee that is presumptively sufficient to achieve this objective[.]"[4]

In accordance with the foregoing, the Fifth Circuit applies a two-step analysis in the determination of a fee award.  The court first determines the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work."[5]  After calculating the lodestar, "the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)."  These factors are as follows:

> (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[6]

---

[2]     *Perdue v. Kenny A. ex rel. Winn*, 130 S.Ct. 1662, 1671 (2010).

[3]     42 U.S.C. § 1988(b) (emphasis added).

[4]     *Perdue*, 130 S.Ct. at 1672-73.

[5]     *Jimenez v. Wood County*, 621 F.3d 372, 379 (5th Cir. 2010).

[6]     *League of United Latin Am. Citizens # 455.*, 119 F.3d at 1232 (*citing Johnson, supra*.).

2

The Supreme Court has specifically recognized that in those cases where "a plaintiff has achieved only partial or limited success," the lodestar yields "an excessive amount."[7] A strict application of lodestar may be inappropriate "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."[8] In such cases, the district court "may simply reduce the award to account for the [attorney's] limited success."[9] In accord, the Fifth Circuit has held that "[a]warding attorney's fees based on the damages, or degree of success obtained, is completely in line with the holdings of the Supreme Court and this Circuit."[10] Indeed, the Fifth Circuit recognizes that "the most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained."[11]

Herein, Mr. Theriot suggests that Plaintiff's lodestar calculations as to both hours expended and hourly rate are unreasonable and should be reduced on that basis. Furthermore, Mr. Theriot submits that the fee award should be further reduced in light of the fact that Plaintiff only succeeded on half of her claims and obtained a relatively small damage award. Ultimately, Plaintiff is only entitled to a small fraction of the attorney's fees claimed.

A.  **Plaintiff's lodestar calculations are unreasonable.**

Applying the requisite lodestar analysis, the attorney's fees claimed by the Plaintiff are manifestly unreasonable. First of all, Plaintiff's counsel has submitted hourly attorney rates that are markedly high for the Middle District (and considerably exceed the hourly rate of

---

[7]   *Stallworth v. Northrop Grumman Ship Sys.*, 385 Fed. Appx. 408, 410 (5th Cir. 2010) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436- 37 (1983)).

[8]   *Id*.

[9]   *Id*.

[10]  *Flowers v. S. Reg'l Physician Servs., Inc*., 286 F.3d 798, 802 (5th Cir. 2002).

[11]  *Migis v. Pearle Vision, Inc*., 135 F.3d 1047 (5th Cir. 1998).

undersigned counsel). Secondly, the hours claimed by Plaintiffs are plainly unreasonable for the type of work performed. For both of these reasons, Plaintiff's lodestar calculations should be reduced considerably.

**1.      The hourly rates claimed by Plaintiff's counsel are excessive.**

Mr. Theriot urges that the fees requested by Plaintiff are excessive and therefore unreasonable. First of all, Plaintiff claims hourly rates of $275.00 per hour for Tregg C. Wilson ("T. Wilson") and Charles C. Wilson ("C. Wilson") (*in globo*, the "Wilson Attorneys") and $200.00 per hour for Brett Robinson ("Mr. Robinson"). The U.S. Supreme Court has held that hourly rates for the purposes of attorney's fees "are to be calculated according to the prevailing market rates in the relevant community."[12] "When the attorney's customary hourly rate is within the range of hourly fees in the prevailing market, that rate should be considered in setting a reasonable hourly rate."[13]

In the present case, the legal market in which Plaintiff's counsel practices is the Middle District of Louisiana. The highest hourly award in the Middle District cited by Plaintiff is $255 per hour for experienced counsel in *Netherland v. City of Zachary*, although this is ostensibly due to a typo – the actual hourly award made in that case was ***$225 per hour***.[14] In light of Plaintiffs own cited authority, Mr. Theriot submits that a reasonable hourly fee for the more experienced attorneys in this case, the Wilson Attorneys, is $225 per hour. Mr. Theriot submits that Mr. Robinson's hours not be compensated because he was not enrolled as counsel of record in the case. If he were to be compensated, Mr. Robinson, who is less experienced, would have

---

[12]    *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[13]    *League of United Latin Am. Citizens # 455.*, 119 F.3d at 1232.

[14]    *Netherland v. City of Zachary*, 2009 U.S. Dist. LEXIS 93928 (M.D. La. Oct. 8, 2009) ("After review of the current market in Baton Rouge and the parties' affidavits, the Court sets the reasonable rate at $225 for attorneys".).

been entitled to $150 per hour. These fees are more in accordance with prevailing hourly rates in the Middle District. Because Mr. Robinson is not even enrolled as counsel of record in the case, his hours should be eliminated entirely.

### 2. The hours submitted by Plaintiff's counsel are excessive.

Combined, Plaintiff's counsel asserts that an astounding 314.9 legal man-hours were expended by a total of three (3) separate attorneys in this case. "When a party seeks an award of attorney's fees, that party bears the burden of submitting evidence of the hours worked[.]"[15] "In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours 'that are excessive, redundant, or otherwise unnecessary.'"[16] Mr. Theriot submits that the hours claimed by Plaintiff's counsel are facially excessive by a sizeable degree and should be slashed.

Indeed, virtually every billing item submitted by Plaintiff's counsel appears excessive, particularly on the billing of the lead attorney, T. Wilson. Right off the bat, T. Wilson claims to have spent four (4) hours on the initial client meeting alone, and then claims to have prepped Ms. Hernandez an additional three (3) hours prior to her meeting with the FBI, for a total of eight (8) hours of simply speaking with Ms. Hernandez before doing anything else in the case. Surely, initially meeting with Ms. Hernandez could have been accomplished in an hour, or even less. Co-counsel C. Wilson also claims that he, as an experienced plaintiff's attorney, took a full day's

---

[15] *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

[16] *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009).

work, or eight (8) hours, to draft a simple civil rights complaint.[17] Mr. Theriot submits that this task should have been accomplished in a maximum of three (3) hours.

T. Wilson also claims that very simple tasks involving basic forms, tasks better suited for a paralegal, that took him excessive amounts of time to accomplish. For example, T. Wilson claims to have spent 1.5 hours on a public records request, 1 hour to prepare two waivers of service, and repeatedly attribute 0.5 hours each to prepare rote enclosure letters. It should take no more than a half hour to prepare a records request, and no more than a few minutes to prepare a waiver or service or an enclosure letter except in rare cases. More fundamentally, these are not tasks that should be performed by an attorney charging an attorney's hourly fee. Other tasks, such as reviewing simple emails or reading notices, were billed as 0.2, 0.5, or even more. Few, if any of these pedestrian tasks should have taken more than a single tenth of an hour billing increment.

Rather than go through each line individually, undersigned counsel has attached a copy of Plaintiff's counsel's billing together with a notation of what she regards to be reasonable hours on the right-hand side.[18] Deducting excessive hours yields total hours across all three (3) attorneys of yields 257.7 hours. Applying the reduced hourly fees of the foregoing section yields a total proposed lodestar of $56,857.50.

---

[17] Like other fees, the eight (8) hour fee for drafting the complaint is all the bills of all three attorneys with a designation "(CW)." Undersigned counsel assumes that this was an indication that the billing was for C. Wilson and thus was not triple-counted, or that it took a total of twenty-four (24) work hours to craft a single complaint. Likewise, in all other cases where a repetitive parenthetical indicator appears to refer to co-counsel, those hours were omitted from undersigned counsel's calculations.

[18] *See*: Exhibit "A" attached hereto, Plaintiff's Legal Bills With Excessive Charges Notated, *generally*.

**B.     Plaintiff has only achieved limited success and attorney's fees should be reduced accordingly.**

Mr. Theriot urges that the lodestar should be further reduced in light of trial verdict. The U.S. Supreme Court has held that "[w]here recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."[19] This rule "promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'"[20] At trial, two of Plaintiff's tort claims were rejected and she was awarded a mere $15,000 in compensatory damages plus $35,000 in punitive damages, for a total damage award of $50,000.[21] Mr. Theriot submits that the relatively low damage award rendered by the Court in this case, especially in light of the extreme nature of Plaintiff's original allegations, warrants a downward departure from the loadstar.

In determining a damage award under Section 1988 seeking monetary damages, "[t]here is no precise rule or formula"; instead, the district court "necessarily has discretion in making this equitable judgment."[22] Although there is no *per se* rule of proportionality, it remains "an appropriate consideration in the typical case."[23] In the present case, Plaintiff brought claims under Section 1983 and state law, including the torts of assault and battery, false imprisonment, and intentional infliction of emotional distress ("IIED"). Plaintiff succeeded on her Section 1983 and assault and battery claims, but it was found that she had not proven either false

---

[19]     *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (*quoting City of Riverside v. Rivera*, 477 U.S. 561, 585, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986) (Powell, J., concurring in judgment) (omission in original)).

[20]     *Id.* at 114-5 (*quoting Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989))

[21]     *See*: Doc. 86, p. 17-18.

[22]     *Hensley*, 461 U.S. at 436-37.

[23]     *Hernandez v. Hill Country Tel. Co-Op., Inc*., 849 F.2d 139, 144 (5th Cir. 1988).

imprisonment or IIED – *essentially half of her claims*. Worse, even on the claims she did win, Ms. Hernandez failed to prove significant compensatory damages due to her failure to obtain medical treatment and/or failure to provide defendants with her medical records.

As a consequence of Plaintiff's limited success at trial, the Court awarded damages of only $50,000, an amount wholly disproportionate to the $89,510.94 in legal fees claimed by Plaintiff's counsel. The total damages awarded are *less than 60%* of the claimed fees, and are approximately *six times* the amount of compensatory damages. By any realistic measure, Plaintiff's counsel did not even come close to achieving his objectives. These factors militate strongly in favor of a drastic reduction in Plaintiff's attorney's fees.

On May 18, 2016, Magistrate Judge Wilder-Doomes engaged the parties in a settlement conference. The last offer made to plaintiff was just over $100,000. At that time, Mr. Wilson had already received Mr. Theriot's Motion *in Limine* seeking to strike Plaintiff's medical records and medical related testimony. Mr. Wilson knew that Plaintiff had few, if any, medical records to present because she had not treated regularly. Thus, Mr. Wilson knew when he rejected the defendants' settlement offer that he was going to have difficulty proving quantum. This leads one to speculate that there was only one reason for the plaintiffs' attorney to reject the settlement offer and to try this case knowing that he had no medical records to present - that was to obtain the attorneys' fees award. That decision was a poor one as it turned out be at the expense of the Plaintiff.

Furthermore, applying the other *Johnson* factors, there is no evidence that Ms. Hernandez paid an hourly fee or that Plaintiff's counsel passed on other business to litigate her case. Likewise, nothing in the record suggests that this case involved novel legal issues or that any particular degree of effort was expended in prosecuting Ms. Hernandez's claims. Most crucially,

8

no medical evidence or testimony was offered to substantiate or quantify Ms. Hernandez's claims of severe emotional distress so as to justify a substantial award of compensatory damages, and the fault for that oversight lays squarely with Plaintiff's counsel.  Overall, it appears that Plaintiff's counsel simply went through the motions (sometimes even failing to do that), and it was reflected in the outcome.  In light of this, Mr. Theriot suggests that an additional sixty percent (66%) reduction of Plaintiff's attorney's fees is warranted, for a total fee award of $18,952.48.[24]  Adding Plaintiff's asserted costs of $2,025.94,[25] the total costs and fees award to Plaintiff's counsel should be set at $20,978.42.

## II.   Conclusion:

Considering the above, Defendant respectfully requests that the Plaintiff's Motion for Attorney's Fees be reduced to a reasonable amount, or $20,978.42.

**Respectfully submitted this 21st day of September, 2016.**
**By:   The Law Office of Sally Dunlap Fleming, P.L.C.**

*/s Sally D. Fleming*
**SALLY D. FLEMING, T. A. Bar Roll No. 20814**
**OWEN M. COURREGES, Bar Roll No. 31113**
**818 Howard Avenue, Suite 305**
**New Orleans, LA  70113**
**Telephone: (504) 891- 3090**
**Telecopier: (504) 895-5190**

**Attorneys for Earl Theriot, individually.**

---

[24]   It should be noted that this amount actually exceeds what Plaintiff's counsel would receive under a 35% contingency fee contract, which would have been a $17,500 contingency fee.  This is a perfectly fair and reasonable fee under the circumstances.

[25]   Mr. Theriot does not dispute T. Wilson's reported costs.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 21st day of September, 2016, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of the filing to the following:

Mr. Charles Connell Wilson
Wilson & Wilson
8550 United Plaza Boulevard, Suite 702
Baton Rouge, LA 70803

Mr. Tregg C. Wilson
Wilson & Wilson
8550 United Plaza Boulevard, Suite 702
Baton Rouge, LA 70803

Mr. Scott Thomas
700 N. 10th St
Baton Rouge, LA 70802

                                    */s Sally Fleming*
                                **SALLY DUNLAP FLEMING**